# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D2024-2111
LT Case No. 2021-DR-000146

———————————————

KARL TUCKER,

    Appellant,

    v.

JAMMIE TUCKER n/k/a JAMMIE
RENAE LANCASTER,

    Appellee.

———————————————

On appeal from the Circuit Court for Sumter County.
Michelle T. Morley, Judge.

Raymond S. Dietrich, of Raymond S. Dietrich, PLC, Phoenix,
Arizona, for Appellant.

Alyssa Vinson and A.J. Rohe, III, of Rohe Law, Tavares, for
Appellee.

April 11, 2025

EDWARDS, C.J.

    Karl Tucker ("Former Husband"), appeals the trial court's
Order On Former Wife's (Jammie Tucker), Amended Motion To
Correct Qualified Domestic Relations Order ("Corrective Order").
The Corrective Order, rendered in 2024, relied upon Florida
Family Law Rule of Procedure 12.540(a), and purported to correct

a clerical mistake in a Qualified Domestic Relations Order ("QDRO") entered in 2021. Former Husband argues that the Corrective Order did not address a clerical mistake but instead made a substantive change to the 2021 QDRO; thus, making Rule 12.540(b), with its one-year time limit to seek relief, applicable. We agree, quash the Corrective Order, and remand for further proceedings.

## Background

The parties' marriage was dissolved by a final judgment entered on May 28, 2021, which incorporated their Marital Settlement Agreement ("MSA"), dated March 19, 2021, that settled all issues between them.[1] In accordance with the MSA, the final judgment provided in part that Former Wife would receive one-half of the marital portion of Former Husband's Florida Retirement System ("FRS") Pension Plan benefits which were to be transferred to her via a QDRO. The final judgment directed Former Husband to retain someone, at his expense, to prepare the QDRO. Former Husband, who was pro se up to this point in the dissolution, retained attorney Raymond Dietrich to carry out that task. Former Wife was represented by her current law firm during the dissolution, but prior to preparation and entry of the QDRO, her counsel filed a conclusion of representation, leaving her pro se.

## The 2021 QDRO

Mr. Dietrich's office sent a draft of the QDRO to Former Husband and also to Former Wife, who was pro se at that time. Both parties reviewed the draft QDRO and on September 20, 2021, both literally signed off on the draft beneath the statement, "AGREED TO AS TO FORM AND CONTENT."[2] The final judgment reflected that the trial court retained jurisdiction to enforce, construe, and interpret the terms of the MSA and final

---

[1] Indeed, the parties waived appearance at any final hearing based on having resolved every issue in the MSA.

[2] Former Wife claimed that she did not actually read over the draft QDRO at that time due to being hurried by Former Husband.

2

judgment, and for entry of relevant orders.[3]  After the approved version was submitted, the trial court entered the QDRO on October 11, 2021, with a notation on the QDRO that copies had been furnished to the parties and to the plan administrator for FRS.  Paragraph 6 of the QDRO provided in part that Former Wife "is not entitled to Deferred Retirement Option Program ("DROP") benefits." [4]

On April 11, 2024, Former Wife, through counsel, filed her initial motion to correct the 2021 QDRO.  In her motion, she relied upon Rule 12.540(a) in seeking to correct a "clerical error."  She asserted that the above-quoted language of paragraph 6 was "presumably mistakenly added" to the QDRO.  She moved for the court to correct the QDRO so that she would be entitled to her share of Former Husband's DROP benefits.

Former Wife subsequently filed an amended motion to correct the 2021 QDRO.  She still claimed the language in paragraph 6 was a clerical error but added claims that the language in paragraph 6 of the QDRO depriving her of the DROP money resulted from Former Husband committing fraud, exercising duress, and engaging in civil theft and conversion.  Former Husband contested the motions' allegations.

---

[3] The Corrective Order mentions in passing that an order entered without subject matter jurisdiction is void; however, given the court's explicit order requiring Former Husband to prepare the QDRO, and its reservation of jurisdiction for entry of orders, it is clear that the trial court had subject matter jurisdiction to enter the 2021 QDRO.

[4] Former Wife does not deny receipt of a copy of the QDRO when the court entered same in 2021, but she denies receipt of a letter from FRS in 2022, showing a copy being sent to her, advising that she would not participate in Former Husband's DROP benefits under the terms of the 2021 QDRO.

3

## The Dispute Over DROP Payments

Under certain circumstances, an employee participating in the FRS pension plan can enter or participate in DROP. As an oversimplified explanation of DROP, that means although the employee is still employed, not yet actually retired, FRS begins making pension payments into an account designated for the employee. Payments to an employee's designated DROP account are "the retirement benefits that would have been paid [monthly] had the employee retired," instead of continuing to work. *Ganzel v. Ganzel*, 770 So. 2d 304, 305 (Fla. 4th DCA 2000).

Depending upon what the employee has elected, those monthly pension payments can be made into the participant's DROP account for several years while the employee continues to work and draw regular pay. The employee cannot access the funds in the DROP account until full retirement and separation from employment, at which point the accumulated lump sum, interest, and cost of living adjustment payments become available to the fully retired former employee.

Although the MSA and final judgment were clear that Former Wife was entitled to half of the marital portion of Former Husband's FRS pension, neither the MSA nor the final judgment mentioned DROP. Former Husband's attorney testified that he prepared the subject QDRO to exclude Former Wife's right to receive any of the DROP money because the MSA was silent as to DROP. Former Wife testified that she never intended to waive her right to receive her share of Former Husband's DROP money, while Former Husband testified that it was his specific intent to exclude her from participating in his DROP benefits.[5]

## Correction of Clerical Mistake or Substantive Change

To resolve the parties' dispute, the trial court conducted an evidentiary hearing over the span of two days. The trial court

---

[5] Former Husband's failure to respond to requests for admission served by Former Wife resulted in certain facts being deemed admitted by him.

4

concluded that the language in paragraph 6 of the 2021 QDRO excluding Former Wife's receipt of DROP benefits should not have been included and was added in error. Paragraph 6 was ordered stricken from that QDRO by the Corrective Order so that Former Wife would receive her fifty percent share of the marital portion of Former Husband's DROP benefits.

The trial court made the following statement in its Corrective Order, "Rule 12.540(a) allows a mistake in a judgment or order to be corrected by the Court at any time on its own initiative or on the motion of any party." That leads us to conclude that the trial court relied upon Rule 12.540(a) in granting relief. That subsection of the rule provides:

> **(a) Clerical Mistakes.** Clerical mistakes in judgments or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal such mistakes may be so corrected before the record on appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

Fla. Fam. L. R. P. 12.540(a).

The provisions of Rule 12.540(a) and (b), relevant to our analysis, are identical to the provisions of Florida Rule of Civil Procedure 1.540(a) and (b), which permit us to consider cases decided under either rule. "The 'clerical mistakes' referred to by rule 1.540(a) are only 'errors or mistakes arising from accidental slip or omission, and not errors or mistakes in the [s]ubstance of what is decided by the judgment or order.'" *Byers v. Callahan*, 848 So. 2d 1180, 1184 (Fla. 2d DCA 2003) (quoting *Town of Hialeah Gardens v. Hendry*, 376 So. 2d 1162, 1164 (Fla. 1979)); *see also Lorant v. Whitney Nat'l Bank*, 162 So. 3d 244, 245 (Fla. 1st DCA 2015) ("A trial court 'has no authority under Rule 1.540(b) to make substantive changes.'" (quoting *Freeman v. Sanders*, 562 So. 2d 834, 835 (Fla. 1st DCA 1990))). "Hence, the rule is essentially

5

designed to correct typographical errors and the like rather than to address due process violations or substantive errors in a judgment." *Purdue v. R.J. Reynolds Tobacco Co.*, 259 So. 3d 918, 921 (Fla. 2d DCA 2018). Rule 1.540(a) is only available to correct "an accidental, non-substantive mistake of the pen." *Steele v. Brown*, 197 So. 3d 106, 109 (Fla. 1st DCA 2016).

The Corrective Order uses the word "mistake" and "error" rather than "clerical mistake," and it certainly does not deal with an accidental slip, typographical error, or mistake of the pen. Further, Former Wife admitted in her answer brief that "the evidence has shown that this was not a clerical mistake."

The trial court noted that the language in paragraph 6 of the QDRO "harmed and reduced Former Wife's share of the [FRS] Pension Plan and increased Former Husband's portion." The Corrective Order changed the substantive financial rights of the parties. The Corrective Order amounts to a 180-degree change from the 2021 QDRO, which denied Former Wife any of Former Husband's DROP money, to now granting Former Wife her one-half share of the marital portion of his DROP money. A corrective order which changes the parties' relative shares in an asset is a substantive change, not the "correction of a clerical mistake." *Steele*, 197 So. 3d at 109.

"A trial court has 'no authority under Rule 1.540(a) to make substantive changes.'" *Lorant*, 162 So. 3d at 245 (quoting *Freeman*, 562 So. 2d at 835). Litigants are not entitled to relief under rule 1.540(a) if the proposed "correction" of the earlier order would substantially change its impact and effect. *Gulfstream Micro Sys., Inc. v. Kingsbridge Boca Ass'n*, 564 So. 2d 554, 555 (Fla. 4th DCA 1990). Thus, we hold that the trial court's Corrective Order improperly made a substantive change in erroneous reliance upon Rule 12.540(a).

Rule 12.540(b) permits a trial court to grant relief from judgments and orders, which would allow substantive changes under specified circumstances. We note that this subsection of the rule is not mentioned in the Corrective Order; however, we will consider its possible applicability. The only reasons for which relief may be granted under that subsection that could possibly

6

apply here are set forth in Rule 12.540(b)(1) "mistake, inadvertence, surprise, or excusable neglect" and (3) "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Fla. Fam. L. R. P. 12.540(b)(1) and (3). The trial court does mention "mistake" in the Corrective Order, but it made no finding regarding fraud despite Former Wife's allegations to that effect. None of the other reasons in subsections (1) or (3) were alleged or found to have existed; however, that is all beside the point because of timing.

To seek relief under Rule 12.540(b), "[t]he motion must be filed within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, order, or proceeding was entered or taken . . . ." Here, Former Wife's motion to correct the QDRO entered October 11, 2021, was filed on April 11, 2024, long after the 1 year period provided by Rule 12.540(b)(1) and (3), had expired. Thus, the trial court lacked authority to enter the Corrective Order under Rule 12.540(b).

Accordingly, we are compelled to quash the July 15, 2024 Order On Former Wife's Amended Motion To Correct Qualified Domestic Relations Order, and remand for further proceedings including the issuance of an amended QDRO, if required by FRS, to restore the parties' status and rights to what was set forth in the October 11, 2021 QDRO. By reaching this decision, we do not condone or find appropriate the inclusion of paragraph 6 in the original QDRO, given the language contained in the MSA and final judgment. Instead, we hold that under the circumstances and timing present in this case, the remedy sought under Rule 12.540 is not available to Former Wife.

REVERSED and REMANDED with instructions.

LAMBERT and JAY, JJ., concur.

7

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____